SMITH, Justice,
dissenting:
The majority would reverse and render the Youth Court Judge on both issues. I cannot agree with the majority’s analysis of the law nor of Judge McPhail’s intent as determined from the language of the commitment order. While I do agree that a youth court judge cannot require “proof’ of rehabilitation efforts in advance of the superintendent’s release of a child from training school, nevertheless I would affirm the decision as not being a determinative commitment and would allow the youth court judge to require of the training school access to the information and/or testimony essential that was sought concerning this minor. This process is easily accomplished prior to the superintendent of the training school releasing the child back into the community.
I must respectfully disagree with the majority’s claim that Judge McPhail imposed a determinative commitment of one year in Columbia Training School upon A.B., Jr. Crime is at an all-time high with a significant majority of criminal acts being committed by juveniles. Youth court judges must make the final determination of how to rehabilitate these children and assist them in becoming productive and responsible citizens. These judges must continue to explore all possibilities for placement, even after numerous confinements to a training school such as Judge McPhail faced with AB., Jr., in this case. Failure to accomplish this seemingly impossible mission guarantees a built-in overflow into an already overcrowded adult criminal justice system.
Judge McPhail was confronted with a most serious challenge in attempting to rehabilitate this child. In view of the minor’s prior history, nothing short of a miracle would suffice. A.B., Jr., thirteen years of age at the time of this third commitment, had at least two prior serious offenses which had required his custody within a state training school. Youth court judges are charged with the responsibility of making sound decisions which will alter a child’s behavior and result in rehabilitation. Having exhausted all means available for rehabilitation within his local system in Forrest County, Judge McPhail had committed this minor to training school on the two prior occasions. It should be obvious that a very concerned Judge McPhail was not convinced that the minor had received the maximum benefit of any rehabilitative measures from the minor’s two previous short commitments to training school. Additionally, the judge was equally unassured that the overall goals, if any, assigned to AB, Jr., had been implemented in *583 remediating the minor’s prior delinquent behavior. It appears the judge was somewhat frustrated by A.B., Jr.’s previous two short stays at the training school with no apparent modification in his delinquent behavior. It is equally clear from the judge’s order that he was concerned that a pattern commonly known as the “revolving door” had emerged with the'training school’s handling of A.B., Jr.’s case. The judge’s concern is supported by A.B., Jr.’s two prior short commitments to training school; yet upon release from custody, prompt repetition of acts of delinquency occurred. These previous short six to eight week confinements almost per se indicate a failure to adequately address the rehabilitation of children with records such as A.B., Jr.
Judge MePhail opined that it was not in the child’s best interest or welfare that he be released without the training school demonstrating to the youth court how the minor had been rehabilitated. The judge was clearly entitled by statute to such information and the process to accomplish the delivery could easily have been concluded dining the time frame between the twenty day notice by the superintendent to the judge and the actual release of A.B., Jr. on parole by the training school.
The majority’s contention that such action by Judge MePhail amounted to a determinative commitment of one year in the training school is ill founded. There is no semblance whatsoever in the case sub judice as compared to this Court’s only other ease concerning this issue. This Court, in the case of In the Interest of T.D.B., a Minor Child, 446 So.2d 598 (Miss.1984) correctly held an order of the family court judge confining a child to the training school for a minimum period of six months was contrary to Miss.Code Ann. § 43-27-25 (1972). In T.D.B., the judge’s language within the commitment order as well as his stated rebanee upon a different statute which required six months confinement, clearly indicated no doubt whatsoever that he ordered a six month confinement for T.D.B. Such action clearly fixed a specific time for the minor’s commitment.
However, in this case, the youth court judge’s order was not a confinement of one year as claimed by the majority. A logical analysis derived from the order is that Judge MePhail was simply suggesting to the Department of Human Services that based on A.B., Jr.’s prior record, two prior training school commitments, the severity of the offenses, no semblance whatsoever of rehabilitative measures appbed to the minor child, ab of which, when coupled with a new violent aggravated assault necessitating a third time commitment to training school could not possibly result in rehabilitation of the child in a time frame of less than one year. Common sense appbeation by Judge MePhail denoted that two prior short confinements had obviously been unsuccessful. Judge MePhail recognized that in A.B., Jr.’s case, positive behavior- changes would only occur through extensive and prolonged assessment, therapy and appropriate related programs offered by the training school over an extended period of time. Judge MePhail was simply suggesting that the training school might not be doing an adequate job of rehabihtation in A.B., Jr.’s case and that anything less on this third time around possibly would be deemed inappropriate and’ not in the child’s best interest, nor for the protection of the general pubbe and community of Forrest County upon his parole and release by the training school.
In addition thereto, Judge MePhail was placing the superintendent on notice that the court was going to be making a very close examination of what, if any, actions had been taken and/or accompbshed by the training school in altering this child’s behavior. The judge’s action was simply an attempt to insist that a state agency charged with a serious responsibibty, utilize sufficient time, facihties and programs to insure that all that could be done had been done to rehabibtate the child. In short, Judge MePhail simply insisted that the Department of Human Services do its job. Apparently the judge did not bebeve that they had adequately dealt with the child on the two prior occasions and the third occasion would also be suspect if the child was again released in only a matter of a few weeks. What more could a youth court judge do when the statute plainly abows the superintendent to determine the release date of a minor from training school? How is a *584 judge to protect the citizens of his community from multiple assaults if not to insist that the Department of Human Services adequately, sufficiently, and timely address a minor’s behavioral problems prior to releasing him back to the committing court? Judge McPhail’s actions demonstrated his concern both for the minor’s best interest as well as the safety of the citizens of Forrest County.
I also take exception to the majority’s position that the youth court judge has violated § 43-21-605 by claiming that the judge totally ignored the authority vested in the superintendent to parole a child at “any time he may deem it in the best interest and welfare of the child.” Maj. at 581. The majority is correct that such release of a minor child is solely the determination of the superintendent. However, the majority again misconstrues what the youth court judge in this case was requiring of the superintendent of the training school. Miss.Code Ann. § 43-21-605(3) is incorrectly cited by the majority, as that section was amended by the 1994 Legislature. The appropriate subsection is paragraph (4) rather than (3) as stated by the majority. However, the language of both paragraphs is identical. Regardless, the majority fails to realize that as amended, Miss. Code Ann. § 43-21-605(4) states: Any institution or agency to which a child has been committed shall give to the youth court any information concerning the child as the youth court may at any time direct. This means that a youth court judge could, as clearly authorized by statute, require a hearing with production of any and all records pertaining to a child by anyone or any agency having information concerning that child, including the superintendent of the training school, prior to parole of that child by the superintendent. The majority is correct that it is the superintendent who determines parole, but the majority fails to note that the youth court judge is clearly entitled to any information from “any institution or agency to which a child has been committed”, concerning the child and that “the youth court may at any time direct” the information be furnished to the court. This includes the time frame within the twenty days from which the judge is notified of the child’s pending release by the superintendent.
There was an obvious reason in this case for Judge McPhail to request this information of the superintendent. Nothing seems to have been done that positively affected the behavior patterns of A.B., Jr. Rather than receive the usual standard forms and notification that the child was being returned to the court for placement back into the community, Judge McPhail believed he was entitled to more detailed information as to what, if anything, had been done to attempt to rehabilitate A.B., Jr. The judge was therefore correct to insist upon this information, because it is the judge who must then make the final determination of whether it is in the best interest of the minor child to return him into the community, considering if he may be a threat to the general public at large, or their property. The reality and importance of the judge’s precarious situation is understood more easily when it is realized that he cannot return a child to a training school without conducting a revocation hearing or a disposition based upon a new delinquency charge being determined. It is the judge who must bear this responsibility, and he will be the first to be confronted by repercussions from the community if he makes an inappropriate decision concerning the minor which results in another aggravated assault or worst yet, the death of an innocent citizen. It should be equally clear then that the youth court judge should be entitled to any and all relevant materials and information concerning a child, especially at the critical stage of proceedings facing Judge McPhail.
The question thus posed to Judge McPhail, although clear, was certainly not simple. The judge was faced with how he could allow this child to be returned back into the community, possibly jeopardizing the child’s best interest as well as the community’s concerns without knowing for sure what, if anything, the training school has accomplished from three prior short commitments. While the judge could not prevent A.B., Jr.’s release nevertheless, it is the judge who must find the proper placement be it the minor’s home or a suitable alternative. To say that Judge McPhail was highly suspicious of any positive *585 results whatsoever would be a vast understatement. The youth court judge was entitled to this information as a minimum.
Judge McPhail was well within his statutory authority to require information, documents and/or testimony to assist him in making the appropriate placement decision in A.B., Jr.’s case. This is true even though the judge could not prohibit the superintendent’s order of parole. Besides, what harm could possibly come from allowing a youth court judge to require that he be furnished this information as authorized by statute any time subsequent to the twenty day notice of release and the actual release by the superintendent?
The majority’s conclusion places great confidence in the state training school facilities and personnel. Rightfully so, if they’ve done their job. But, if not, the judge who bears the ultimate responsibility for the minor child, should be entitled to have any and all information and/or testimony of officials regarding the child which has been compiled by the training school. Judge McPhail was correct to insist that the training school demonstrate what rehabilitative action they had taken concerning A.B., Jr.’s third commitment to training school. Such concern is rare. Forrest County is indeed fortunate to have such a dedicated member of the judiciary.
I also take exception to the majority’s position that § 43-23-17 of the family court statutes is analogous to 43-21-605. The majority’s claim of the omission of the language “with the approval of the court” from § 43-21-605 which is contrary to the inclusion of such language in § 43-23-17, demonstrates that the Legislature had a different intent when it enacted the youth court provision is preposterous. I fear that the majority mistakenly fails to understand the youth court system. I would submit that this is a prime example of a mistake by the Legislature in leaving such language in the family court statute § 43-23-17. There can be no other logical conclusion.
The legislature created the Family Court of Harrison County, the Youth Court of the City of Pearl, the various county courts, which all operate as youth courts, and the remainder of the state youth courts operated by the various chancery court districts with some chancellors serving as youth court judges and referees appointed to serve in other chancery districts. There is no uniformity within the system. The majority apparently does not understand that although the sole family court system in this state has other jurisdiction and authority, nevertheless, it also functions as the youth court for Harrison County. How could the intent of the Legislature possibly have been to allow the lone family court when functioning as the youth court the right to approve parole of a child by a superintendent of a training school and hot allow the same for the remaining various youth courts in the remaining eighty-one counties throughout this state? They certainly could not have had such intentions. This clearly represents ambiguity and inconsistency between statutes and I would attribute this to mere oversight which the Legislature could and should correct. Besides being incorrect, there was no need to include this analogy as is it in no way affects the disposition of the ease. I would affirm the youth court judge on both issues for the reasons heretofore stated, as clearly there is no violation of the statute.
I respectfully dissent.
DAN M. LEE, P.J., and SULLIVAN and JAMES L. ROBERTS, Jr., JJ., join this opinion.